UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

L. F., in his individual capacity and as a parent of K.S.F. (Student 1) and K.S.F. (Student 2),

Plaintiff,

v.

LAKE WASHINGTON SCHOOL DISTRICT #414,

Defendant.

C17-375 TSZ

ORDER

THIS MATTER comes before the Court on Plaintiff's Motion for Partial Summary Judgment Regarding First Amendment Violations and § 504 Retaliation, docket no. 33 ("Plaintiff's Motion"), and Lake Washington School District's Cross-Motion for Summary Judgment, docket no. 36 ("Defendant's Cross-Motion"). Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

**Background**

   **I.   L.F.'s History of Abusive Communications**

Plaintiff L.F. is a divorced parent of two students who attended schools located within the Lake Washington School District (the "District"). *See* Declaration of Jonathon

ORDER - 1

Hedin, docket no. 38 ("Hedin Declaration") at ¶¶ 2, 4; Declaration of Robert Johnson, docket no. 40 ("Johnson Declaration") at ¶¶ 2, 4. L.F. alleges that both of his children suffer from anxiety and behavioral disorders which, in turn, adversely affect their school performance. *See, e.g.*, Amended Complaint, docket no. 29 (the "Complaint"), at ¶¶ 6, 7, 10–12, 72, 95.

L.F. has a history of angry, aggressive, and hostile encounters with District staff. *See, e.g.*, Declaration of Matt Livingston, docket no. 37 ("Livingston Declaration"), at ¶¶ 17, 36–37; Hedin Declaration at ¶¶ 6, 8. L.F.'s communications were extraordinarily time-consuming and made District staff feel threatened and intimidated. *See* Hedin Declaration at ¶¶ 8, 10, 11, 13; Declaration of Sue Anne Sullivan, docket no. 39 ("Sullivan Declaration"), at ¶¶ 7, 10. Through his communications, L.F. attempted to address issues concerning his children's education and to discuss the possibility of implementing a plan under Section 504 of the Rehabilitation Act of 1973 ("Section 504"). *See* Sullivan Decl. at ¶ 11.[1]

---

[1] On November 4, 2015, L.F. attended a "Guidance Team" meeting to discuss whether one of his children should be evaluated for a "Section 504 plan." Chavez Declaration, Exhibit 16. A Section 504 plan would have accommodated L.F.'s child for any anxiety disorder and assist her in succeeding in the educational setting. *Id.* The Guidance Team concluded that the need to accommodate the child's anxiety was unsubstantiated and declined to move forward with an evaluation under Section 504. *See id.*, Exhibits 15, 16. L.F. informed the District that he wished to appeal the Guidance Team's determination. *Id.*, Exhibits 18, 19. District personnel conferred with L.F. concerning his right to appeal and offered additional times to meet with him to discuss his concerns. *See id.*, Exhibit 27. L.F. never responded, *see id.*, Exhibit 42, and later informed the District that he was not pursuing an appeal of the November 4, 2015, Guidance Team decision. Sullivan Declaration at ¶ 31.

## II. The District Implements the Communication Plan

On November 23, 2015, the District issued to L.F. a plan in response to L.F.'s troublesome communications. Declaration of Carlos A. Chavez, docket no. 42 ("Chavez Declaration"), Exhibit 20 (the "Communication Plan" or "Plan"). The Plan informed L.F. that his communication pattern with the District was not "a productive use of valuable District resources." *Id.* at 1. The Plan further notified L.F. that "the tone and manner of some of [his] communication and interaction with District staff and administrators has regrettably made several of these individuals feel intimidated and bullied." *Id.* Because of the "unproductive communication pattern" that had developed, the Plan set forth various procedures designed to process and respond to any issues L.F. wished to raise with the District or its staff. *Id.* These procedures centered on a biweekly meeting that would be held between L.F. and three District personnel. *See generally id.* The Plan stated that all of his communications with District staff should be made at these meetings and that District employees would not respond to other attempts to communicate. It confirmed that "[a]ll of [L.F.'s] issues with the District involving [his] students should be addressed . . . at our biweekly meetings." *Id.* at 1.

The Plan did not restrict L.F.'s normal access to school records or his attendance at any school activities ordinarily open to parents, and did not apply in emergency situations. *Id.* The District advised L.F. that the Plan was a final decision from which he could appeal under RCW 28A.645.010 and that, should he choose to ignore the Plan, the District could seek an Anti-Harassment Order against him. *Id.* at 2. L.F. never challenged or appealed the Communication Plan under the statute.

Consistent with the Plan, the designated District personnel met with L.F. to discuss any issues pertaining to his students' education. *See* Sullivan Decl. at ¶¶ 28–33; Livingston Decl. at ¶¶ 21–25. Despite numerous subsequent meetings with District staff and opportunities to advocate on behalf of his children consistent with the Plan, L.F.'s communications with the District remained problematic. *See, e.g.*, Sullivan Decl. at ¶¶ 33–34; Johnson Decl. at ¶ 14; Chavez Decl., Exhibit 32.

On January 28, 2016, the District notified L.F. that he had violated the Communication Plan and that the District would "be imposing additional sanctions" for the violations. Chavez Decl., Exhibit 34. These sanctions included reducing the District's periodic meetings with L.F. to once a month. *Id.* (LWSD_006728); Sullivan Decl. at ¶ 35.[2] L.F. violated the Plan again at the beginning of the 2016–17 school year. Sullivan Decl. at ¶ 41; Chavez Decl. Exhibits 39, 40. The District met with L.F. on October 28, 2016, during which time he was visibly angry, speaking in an extremely loud voice, and physically intimidating District personnel. Sullivan Decl. at ¶ 43. After this meeting, the District concluded that in-person meetings with L.F. were counterproductive and potentially dangerous for District personnel. Sullivan Decl. at ¶ 45; Livingston Decl. at ¶ 32–33. Accordingly, on November 3, 2016, the District revised the Communication Plan a second time to remove in-person meetings and, instead, require L.F. to

---

[2] The District temporarily relaxed the Plan in June 2016 "based on the relatively low volume and tenor of L.F.'s communication with the district between January and June 2016." Sullivan Decl. at ¶ 37. Within a month, the Plan was reinstated pursuant to a letter from L.F.'s attorney. *Id.* at ¶ 39.

ORDER - 4

communicate with District personnel via email. Sullivan Decl. at ¶ 46, Livingston Decl. at ¶ 33; Chavez Decl., Exhibit 48.

### III. The District Implements a Section 504 Plan and L.F. Initiates This Lawsuit

On November 22, 2016, the Guidance Team met and determined that one of L.F.'s children should be evaluated for a Section 504 plan. On December 16, 2016, that child was found eligible for a 504 Plan, which went into effect in January 2017. Sullivan Decl. at ¶ 48.

L.F. initiated this lawsuit on March 10, 2017. *See* docket no. 1. The operative complaint asserts three claims: (1) violation of Section 504; (2) 42 U.S.C. §§ 1983, 1988 for violation of L.F.'s First and Fourteenth Amendments' right to free speech; and (3) violation of the Washington Law Against Discrimination, RCW 49.60 (WLAD). *See* Amended Complaint, docket no. 26 (the "Complaint) at ¶¶ 91–126.

Plaintiffs' Motion seeks summary judgment on L.F.'s second claim under 42 U.S.C. §§ 1983, 1988 for violation of L.F.'s First and Fourteenth Amendment right to free speech. Defendant's Cross Motion seeks summary judgment dismissal of all claims asserted in the Complaint.

## Discussion

### I. Summary Judgment Standard

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Alternatively, a movant must show that the plaintiff lacks competent evidence to support an essential element of his or her claim. *Id.* at 322; *Luttrell v. Novartis Pharms. Corp.*, 894 F. Supp. 2d 1324, 1340 (E.D. Wash. 2012). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## II. Analysis

### A. Section 504 Retaliation Claim

The Amended Complaint alleges that the District violated Section 504 by implementing the Communication Plan in retaliation to L.F.'s advocacy on behalf of his children and pursuit of a Section 504 plan. *See* Complaint at ¶¶ 91–105.[3] L.F.'s Section

---

[3] L.F. also alleges that the District procedurally violated Section 504 by failing to adhere to a system of procedural safeguards under 34 C.F.R. 104.36. *See* Complaint at ¶ 103. Under Section 504, qualified individuals with a disability cannot be excluded from participating in a federally funded program or activity "solely by reason of her or his disability . . . ." 29 U.S.C. §794(a). 34 C.F.R. 104.36 requires

1  504 retaliation claim is examined under the burden-shifting test established in *McDonnell*

2  *Douglas Corp. v. Green*, 411 U.S. 792 (1972).  Under that test, a claimant must first

3  establish a prima facie retaliation case.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128

4  (9th Cir. 2001).  If successful, the burden then shifts to the defendant to show a

5  legitimate, non-retaliatory purpose for its acts.  *Id.*  Once that showing is made, the

6  plaintiff must produce specific evidence that the proffered reason is pretextual.

7  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

8　　　　Here, L.F. has failed to present evidence to establish a prima facie retaliation claim

9  under Section 504.  The record is devoid of facts establishing a causal link between any

10 protected activity and an adverse action.  *T.B. ex rel. Brenneise v. San Diego Unified Sch.*

11 *Dist.*, 806 F.3d 451, 473 (9th Cir. 2015), *cert. denied sub nom. San Diego Unified Sch.*

12 *Dist. v. T.B.*, 136 S. Ct. 1679, 194 L. Ed. 2d 769 (2016).  L.F. has not shown that "but

13 for" his protected activity, the Communication Plan would not have been implemented.

14 *T.B.*, 806 F.3d at 473.  The record demonstrates the opposite:  the District imposed the

15 Communication Plan in response to L.F's history of burdensome, intimidating, and

16 unproductive communication with District staff—and was completely unrelated to any

17 attempts by L.F. to pursue a Section 504 appeal.  *See, e.g.*, Chavez Decl., Exhibit 20

18 ("Please note this prohibition does not include your right to appeal the 504 decision made

---

districts to maintain a system of safeguards that provide notice, an opportunity to review records, and impartial hearing and review procedures.  The District has submitted more than sufficient evidence establishing its compliance with 34 C.F.R. 104.36 and refuting L.F.'s allegation to the contrary.  *See, e.g.*, Chavez Declaration, Exhibits 58, 60; Declaration of Michelle Mullen, docket no. 41, Exhibit A.  L.F. has failed to present evidence creating any issue of fact as to whether the District committed any procedural violation or otherwise violated Section 504.

by the District."); Sullivan Declaration at ¶ 28. Contrary to L.F.'s position, the purpose of the Plan was to conserve District resources and provide L.F. with an efficient channel through which he could communicate. Because L.F. has not submitted evidence establishing a prima facie claim of retaliation and, having failed to identify any other violation of Section 504, the District is entitled to judgment on L.F.'s Section 504 claim as a matter of law.

### B.    Free Speech Claim

L.F. argues that the Communication Plan violated his First Amendment right to free speech. The record belies this argument in two main respects. First, the District is free to regulate the speech of its own personnel without implicating the First Amendment. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009) (the First Amendment does not regulate government speech).[4] The face of the Plan does not restrict or prohibit L.F. from speaking about any topic with the District. Instead, the Plan—both as originally issued and subsequently amended—directed L.F. to use specified channels of communication when interacting with District personnel about substantive issues concerning his children. The Plan informed L.F. that District employees would not respond to attempted substantive communications outside of those channels. Notwithstanding this constraint, the Plan informed L.F. that he was free to access school

---

[4] L.F.'s reliance on *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Rels. Comm'n*, 429 U.S. 167 (1976) is misplaced. At issue in that case was whether teachers could be prohibited from making public comments at open school board meetings. *Id.* at 174–76. Here, L.F. is not asking to publicly speak to the District in open meetings and this case does not apply. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580 (6th Cir. 2008) is likewise inapposite. That case concerned a First Amendment retaliation claim, which L.F. has not pleaded here.

ORDER - 8

records, attend regular school activities, and respond to emergency situations. Together, the terms of the Plan did not restrict L.F. from speaking about any topic, but instead regulated which types of communications District staff would respond to. The Plan did not impinge on L.F.'s right to speak freely to the District.

Second, assuming the limitations imposed by the Communication Plan did somehow restrict L.F.'s speech, the Plan is still a reasonable, viewpoint-neutral restriction in a non-public forum.[5] *Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–80 (1992); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267–70 (1988). The purpose of the Plan was to manage L.F.'s relentless and unproductive communications with District staff. Rather than preclude L.F.'s communications, the Plan simply laid out steps to ensure that L.F.'s speech was communicated and received in a more productive way that would allow the District to better field the problematic communications without the fear of violence or harassment. To be sure, the Plan addressed the manner in which L.F. communicated with the District—not the content of his speech or any viewpoints he wished to convey. This is the type of narrowly-tailored, content-neutral regulation that the courts have regularly affirmed. *Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 790–91 (9th Cir. 2008). L.F. has failed to rebut the District's evidence establishing these legitimate, content-

---

[5] The District's facilities are not available for general public discourse and are a nonpublic forum. And even if the District's facilities or communications systems could be considered a public forum, the Plan was nonetheless a reasonable time-place-manner restriction. *See Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043–44 (9th Cir. 2002).

neutral reasons for imposing the Plan or otherwise demonstrate that the Plan was content-based.[6] It was not, and L.F. has failed to carry his burden of creating any issue of fact as to whether the District interfered with his constitutional right to free speech. The District is entitled to judgment on L.F.'s free speech claim.[7]

C. **WLAD Claim**

L.F. also alleges that the District violated the WLAD by discriminating against him on the basis of marital status and sex. Complaint at ¶¶ 121–26; *see also* RCW 49.60.010 (identifying marital status and sex as protected classes). L.F.'s position is founded on the belief that the District treated him differently than his ex-wife, M.S., because he was a divorced father. This position is without merit. Washington law imposes the same burden-shifting analysis used by federal courts in deciding public accommodation discrimination claims. *See Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 524 (2001). To establish a prima facie claim of discrimination in a place of public accommodation, L.F. must establish that (1) he is within a protected class; (2) the

---

[6] Whether the District also restricted L.F.'s ex-wife's speech is irrelevant for purposes of determining the constitutionality of the Plan. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Likewise, the fact that L.F. was still permitted to engage in certain every day speech with District staff does not suggest that the Plan was content-based. *Id.*

[7] Plaintiff's Motion also refers to the void-for-vagueness doctrine and a parent's right to raise his or her child, *see id.* at 13–14, 23–24. Both of these arguments are without merit. The evidence establishes that L.F. was provided more than a reasonable opportunity to know what type of conduct the Communication Plan applied to. The Plan was clear on its face and L.F. has not otherwise shown that the District's enforcement of the Plan was somehow arbitrary or discriminatory. For these reasons, L.F.'s void-for-vagueness argument fails. *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017). Likewise, L.F.'s limited right to control the upbringing of his child does not extend to the District's operations or its decisions concerning how to teach L.F.'s children. *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005).

establishment at issue is a place of public accommodation; (3) L.F. is not provided services comparable to those provided to other persons by or at the place of public accommodation; and (3) the protected class was a substantial factor causing the discrimination. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1165 (9th Cir. 2001) (citing *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637 (1996)).

Within this framework, L.F. has failed to establish a prima facie WLAD claim because he has not demonstrated that the District treated him any differently than similarly situated person or that his protected status was a substantial factor in any purported discrimination. L.F. argues that the District treated him differently than his ex-wife and excluded him from communications about his children because he is a divorced father. But the record paints an entirely different picture. The District communicated with L.F. individually without including his ex-wife; it communicated with his ex-wife without including him; and it communicated with both of them simultaneously. In other words, the District treated both parents the same and L.F. has not proven otherwise.[8]

Nor has L.F. shown any issue as to whether L.F.'s protected status was a substantial factor in the District's decision to impose the Communication Plan. The evidence shows that the District executed the Plan in response to L.F.'s pattern of unproductive communications in an effort to properly channel those communications and provide avenues to effectively respond to L.F.'s concerns. Because L.F. has failed to

---

[8] Likewise, the evidence shows that the District implemented communication plans with numerous families irrespective of the parents' sexes. *See, e.g.*, Declaration of Jill Mullins in Support of Plaintiff's Motion for Summary Judgment, docket no. 33-2, at ¶¶ 3–5, Exhibits 3–5.

ORDER - 11

establish the prima facie elements of discrimination, his WLAD claim insufficient as a matter of law and the District is entitled to summary judgment dismissal of that claim.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's Motion for Partial Summary Judgment Regarding First Amendment Violations and § 504 Retaliation, docket no. 33, is DENIED.

(2) Defendant's Cross-Motion for Summary Judgment, docket no. 36, is GRANTED.

(3) All of Plaintiffs' claims are DISMISSED with prejudice.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 16th day of July, 2018.

Thomas S. Zilly
United States District Judge